The opinion of the Oourt was delivered by
Gantt, J.
The grounds taken are substantially the same, and need not be separately commented upon. I will premise, that whatever differences of opinion may formerly have existed, as to the rule which ought to govern in cases of this description, there remains, at present, no doubt *87 upon the subject. Our decisions, for a series of years, have been, and I trust, for the honor and advantage of the State, will ever continue to be governed by the civil law maxim, “that a sound price requires a sound commodity.” It cannot be doubted, but that attempts have too often been made to introduce, as coming within the purview and meaning of this maxim, cases founded on mere inadequacy of consideration, in contracts where all imaginable fairness has been observed, and where the purchaser, with a full and perfect knowledge of the true nature and quality of the thing sold, has nevertheless agreed to give more than it was worth. And from a mistaken apprehension of the true nature of the maxim, others have endeavored to evade the payment of their debts, * where the thing purchased turns out not to answer those speculating views, which led th,em to contract for it. From considerations of this kind, complaints have been uttered against the adoption of the civil law maxim, as a proper and correct rule of decision. It has been thought to have opened a door for endless litigation, and that no person is safe, who enters into a contract, however correct in the transaction, if it should eventually appear, that the contracting parties had not placed themselves upon a perfect footing of equality in point of value. But the perversion and abuse of a rule, is no argument against its intrinsic excellence and worth. To the sound discretion of a court and jury it belongs, to draw the proper discrimination between the cases which do, and such as do not, come within its meaning and efficacy. And, if in any instance, the rule has been rendered subservient to the purposes of chichanery and dishonesty on the part of purchasers, it must be attributed to extrinsic circumstances, not within the control of any human tribunal.
Perhaps it may be proper here to remark, that a great deal of the complexity which arises in actions bottomed upon the adopted principle of the civil law, and defences made under it, emanates from the unceasing endeavors made by ingenious and able counsel, to apply indiscriminately those rules of decision observed in the Enlish courts, which have been exploded here; rules, which have been thought, unjust in themselves, and demoralizing in their effects upon society. Those rules have been relied upon in the present case. It has been argued, that the defence set up in this action, is analogous to the action on the case, in nature of deceit, in England. But can it for a moment be seriously contended, after the repeated trials which we have had in our courts on the subject of implied warranty, under the adopted maxim here, that we are bound by those strict and rigid rules which govern in the action alluded to in England ? There, if an article is sold as sound, which the seller *knew to be otherwise, the plaintiff, in an action brought for the imposition, must aver in his declaration, the knowledge of the seller, or as it is technically expressed, the scienter. The case of the Bezoar stone, Chandelor vs. Lopus, [1] Cro. Jac. 4, quoted by the plaintiff’s counsel, may be taken as an example, that such is the law there. The goldsmith, in that case, was skilled in articles of that description. He had imposed on the plaintiff one, which he affirmed at the time of the sale to be a Bezoar stone; it was purchased as such, from a confidence reposed in the integrity and truth of the seller, whereas it was not so. *88 The plaintiff failed to recover, because be bad not averred in bis declaration that the goldsmith knew it not to be a Bezoar stone, or that he warranted it to be such; and this essential part of the declaration must be strictly proved on the trial. The mind of every honest, upright man, revolts at such a doctrine; and I think I may confidently assert, that such is not the law here. In England, a buyer must, indeed, for his own security, be upon the alert, and wonderfully dextrous and circumspect in detecting the thousand little tricks and villainies, which the crafty and designing are capable of practising on the unsuspecting and unwary, else he can meet with no redress. To such a state of things, they may well have for their maxim, “ caveat emptor.” On oar part we have exchanged it for that of caveat venditor, 'and in behalf of honesty and fair dealing, I would say, esto perpetua.
I think it has been truly observed, that it is a disgrace to the law, that such a maxim, as that of “caveat emptor,” should ever have been adopted. Judge Cooper, in his notes on Justinian, page 610, has expressed his joy, that the good sense of the Carolina Bench had rejected it. Whilst, therefore, on the one hand, a sense of deserved commendation, and the propriety of a strict adherence to an adopted rule of decision, should govern our future determinations, we must, on the other, be careful to guard against those practices of fraud and circumvention, which dishonest purwill sometimes have recourse to, in order that they may get rid of bargains which have been fairly entered into, and where there has been no imposition practised. I think it may be laid down, however, as a sound and correct position, that in no case ought a contract to be enforced, where the contracting parties have entered into it under a misapprehension and ignorance of such defects as would have prevented the contract, had the defects been known at the time. In such cases, the rule, that a sound price requires a sound commodity, applies with full force and propriety. A rule that can have no application or bearing, where the buyer is correctly informed of the true nature and quality of the thing purchased, whatever may be its defects, or whatever the price agreed to be paid for it. To such cases, we must apply the maxim, that “volenti non fit injuria.”
The case of Whitfield McLeod, 2 Bay, 380, has been relied on, as in point, to decide the present. The Judge below, it seems, approving the argument of the Attorney General, in the former case, and recognizing a resemblance in it to this case, adopted it as a part of his charge. It is always with great deference and respect for the opinions of my brother Nott, that I undertake to differ from him; but I must frankly confess, that I have not been able to trace a similitude. What were the facts in that case ? The purchaser critically examined the true state and condition of the ship. He called to his assistance discernment and skill. The seller made just and true representations of all the defects, and asked no more than what such a vessel in such a state was really worth. There was, therefore, no inadequacy of consideration. It was a speculation on the part of the buyer, to which he was prompted by the high price of freight. After the purchase, the price of freight fell The purchaser’s views of gain could not be realized to the extent he had contemplated. The vessel being somewhat heavy on his hands, and as the times had changed, he was willing to change with them, and endeavored to shift a bur *89 den* from his own, upon the shoulders of an innocent and fair seller. Contrast the prominent circumstances of the two cases, and there will be found no analogy between them. In that, there was no defect, but what the purchaser was made acquainted with. Here, both agent and buyer were honestly mistaken in the nature and quality of the thing sold. There, the article was represented as a ship, and it was so. Here, the article was represented as being oil; purchased as such ; both seller and buyer conceived it to be so, bad indeed in point of quality, but both believed that it was oil. For the half-worn ship, only half the price of a new vessel was paid. Here, from a misrepresentation, the purchaser was to give twenty-five times its value. There, the object of the purchase was not defeated, but by extrinsic circumstances; here, the views of the purchaser were frustrated. No tanner would buy, although it was bought as tanner’s oil, and intended for their use ; so expressed by the buyer, and so understood by the seller. But it has been urged, that the defendant here had every opportunity of ascertaining the defects of the article. That he acted with his eyes open, and that if he was not apprised of the particular nature and quality of the article, it was his own fault; and that it is too late after a purchase made, under such circumstances, to complain. To this it may be answered, that although his eyes and those of the seller were both open, their vision was imperfect, both saw darkly. The hidden defects of the article could not be detected, but in its use. The disguise and art which had been practiced, to make it resemble oil, was effectual for a time.
And when we take into consideration, the positive testimony of Col. House, a gentleman of skill aud probity, that gurry or blubber is never barrelled, but for purposes of imposition ; and recollect, that a certain portion of oil, viz., half a gallon to the barrel, was commixed with this article, by which the disguise could be better supported, I can, under such circumstances, entertain no doubt, but that the buyer should be* exonerated from the payment of the price agreed on. We must not, by our decisions, countenance the indulgence of the worst principles of the human heart. The basis upon which our decisions are founded, is that of honesty and correct dealing between man and man. One sanctioned by able jurists, and not the less to be regarded, from its correspondence with the divine precept, “ that we should do unto others, what we would have them do unto us.” I would feign hope, what I fondly believe, that our citizens are not yet hackneyed in acts of deception and fraud. And I think it a dictate of both policy and justice to educate and confirm them, by our decisions, in a continuance of honest deportment towards each other. Others too will themselves be led to the practice of greater circumspection in their intercourse and bargains with us. When an article is sent here for oil, it ought not, on trial, to turn out blubber, no more than if we purchased what is denominated nutmegs, they should prove, on trial, to be wooden ones.
The ingenious counsel for the plaintiff, among other illustrations, to show, that he was entitled to recover the entire sum for which his action was brought, observed, that if A. the owner of a steer, should say to B. who was in want of a milch cow, that he had one for sale, and B. after personal examination of the steer, should nevertheless buy the animal as a cow, that he would be bound to pay the price agreed on. But I hardly *90 think, that an action on a note of hand taken for the consideration money, in such a case, would be supported under the maxim of caveat emptor, in the English courts. But if the money had been paid, still in an action brought for the deceit with a scienter set forth as required, the seller from the authority of the case of the Bezoar stone, quoted by the counsel, would be held to the restoration of the purchase money ; unless, indeed, they should permit the defendant to plead also a sdens of the plaintiff, for the purpose of supporting the maxim of caveat emptor the better. But if the seller, in the case put by the counsel, should have *gone a step further, and bestowed upon his steer any artificial resemblance, by which he could the more readily impose upon the credulity of the buyer, the case would then be more analogous to the one before us, and would leave no doubt, but the purchaser could be relieved from so flagrant an act of fraud and imposition. Now the small quantity of oil, which was commixed with the barrelled blubber, makes this case run on “ all-fours” with the one supposed, when coupled with the addition.
Thus viewing the case, I think it manifestly appears, that the exemption which has been shown the defendant, by the jury, was founded on a correct view of the law and the justice of his defence. It is due to the character of the agent to declare in the opinion now delivered, the entire conviction of the Court that in this transaction his conduct has been perfectly fair, and his views upright. He was deceived by the invoice which had been forwarded. The plaintiff too may have been made .the innocent victim of another’s fraud; and it is to be hoped, if such should be the fact, that the decision in this case, may lead to a redress of the injury and wrong which have been done to him.
The principles of the civil law have been referred to, in the formation of this opinion, and the following quotations are made in confirmation of its correctness. Domat, 81, says “ since people buy a thing only for its use, if it chance to have any defect, which hinders this use or lessens it, the seller ought not to reap the advantage of an apparent value, which the thing sold seemed to have, and yet had it not.” I will not apply the evidence to this quotation from Domat. The use for which the oil was purchased, has been already dilated upon, and the conclusion is irresistible., Again, “where the defects of the thing sold were unknown to the seller, he shall be bound not only to take back the thing, or to abate the price, but likewise to indemnify the buyer, as to the charges which the sale has put him to; such as expenses for carriages, the duties for entries, or others of the like nature.” This *would show, that the verdict rendered has allowed to the plaintiff more than he was entitled to receive. Lastly, “ He who has sold one thing for another, whether he was ignorant of the defect or conscious of it, is bound to take back the thing or to abate the price, and to make good the damages which the buyer shall have suffered.” This fits so aptly the present case, that comment is unnecessary. These quotations may serve as so many texts which sellers may resort to for information on this important branch of the law; and if duly regarded, the happiest consequences may result. Our courts would then be freed from questions growing out of contracts founded in fraud and circumvention.
I am of opinion that the plaintiff’s motion should fail, and that the verdict should stand. <
Johnson, J., concurred.
Prioleau, for the motion. Bayne, contra.

 Smith’s Lead. Ca. 77, marg.